**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

DISCOVERY COMMUNICATIONS, INC., *et al.*,

          Defendants.

Civil Action No. 8:17-CV-03418-DKC

**<u>MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# Table of Contents

Table of Contents ................................................................................................ i

Introduction ...................................................................................................... 1

Issues Presented ............................................................................................... 3

Factual Background .......................................................................................... 4

A.    Discovery fully paid its 2006 and 2007 tax bills for amounts that the IRS timely assessed ........................................................................................ 4

B.    Discovery and the IRS entered into a closing agreement that agreed to a specific amount of additional tax and to refunds of any excess payments ........... 5

C.    Pursuant to the closing agreement, Discovery received refunds for the excess of its 2012 and 2014 tax payments that it made after the statute of limitations for assessment had expired ....................................................................... 9

Argument ......................................................................................................... 11

I.    Standard of review. ................................................................................ 11

II.    To prevail, the IRS must show that Discovery was not entitled to the refunds paid. ..................................................................................................... 12

III.    Discovery's excess payments constituted "overpayments" under 26 U.S.C. § 6401(a) that the IRS was required to refund. ............................................. 12

IV.    The IRS cannot modify refunds that it made in accordance with a closing agreement. .............................................................................................. 17

Conclusion ....................................................................................................... 21

Addendum ........................................................................................................ 22

Appendix A ...................................................................................................... 23

Appendix B ...................................................................................................... 24

Appendix C ...................................................................................................... 25

Appendix D ...................................................................................................... 26

**Introduction**

In this erroneous refund suit, the IRS seeks to claw-back refunds that it paid to Discovery[1] for its tax years ending December 31, 2006, December 31, 2007, and September 17, 2008. The IRS's claims for 2006 and 2007 should be rejected on two independent grounds.[2] First, Discovery is legally entitled to retain the refunds because they arose from payments made by Discovery after the period of limitations for assessment expired. Second, the IRS assessed the relevant tax and paid the relevant refunds in accordance with a binding closing agreement that the IRS cannot now modify.

The law puts a time limit on the IRS to determine if taxpayers owe additional tax. The IRS is statutorily barred from pursuing additional tax and must refund amounts paid by taxpayers after that limitations period expires. For Discovery's 2006 and 2007 tax years, the limitations period expired on December 31, 2011. After that December 31, 2011 deadline passed, Discovery informed the IRS that it owed additional tax for its 2006 and 2007 tax years as a result of elections made for other tax years (and further impacted by other tax items). Then, Discovery made additional tax payments to the IRS to cover those additional taxes. Without more, the IRS would have been statutorily barred from assessing these additional taxes or keeping the payments.

But, as part of a package negotiation covering 2006, 2007, and other tax years, Discovery agreed to waive its period of limitations defense with respect to the agreed assessments for 2006 and 2007. This limited waiver allowed the IRS to apply Discovery's payments to satisfy the

---

[1] Discovery Communications Holding, LLC is the specific legal entity that received the refunds at issue. For simplicity, we use the term "Discovery" to refer to the relevant entity or group of entities.

[2] Discovery's 2008 tax year is not implicated by this motion. Discovery is entitled to prevail for all tax years on the merits, *i.e.*, that Discovery properly computed the exclusions of extraterritorial income (ETI) that are now being challenged by the IRS (which, computations, in fact, the IRS blessed). Am. Compl. at ¶¶ 13–16. The court need not reach this merits issue for 2006 and 2007 to the extent that it grants this motion on either of the two grounds raised by Discovery.

1

additional, agreed-upon liabilities.  The parties ultimately executed a closing agreement that allowed the IRS to assess additional tax of $44,040,833 for 2006 and $8,778,806 for 2007, but required the IRS to refund all excess payments for those years back to Discovery.  The parties then implemented this agreement.  The IRS assessed the specified amounts, applied Discovery's 2012 and 2014 tax payments to satisfy those liabilities (which the IRS still retains today), and refunded the excess back to Discovery.  The refunds of the excess payments totaled $2,501,525.01 for 2006 and $5,996,542.11 for 2007.  These are the amounts at issue in this suit for those years.

The IRS alleges that these refunds were "erroneous" on the grounds that the agreed assessments set forth in the closing agreement ($44,040,833 for 2006 and $8,778,806 for 2007) were too low because they reflected ETI benefits that the IRS now asserts were improperly allowed by the examiner.  But this reflects a misunderstanding of the legal basis upon which the refunds were properly due to Discovery.  Regardless of whether the ETI benefits allowed by the IRS were proper or improper, the IRS had no legal right to the payments that the IRS refunded to Discovery.  This is because Discovery made those payments after the period of limitations for assessment had expired.  The Internal Revenue Code makes clear that all payments made after the period of limitations expires rightfully belong to the taxpayer and not to the IRS regardless of the correct tax liability.

The Fourth Circuit's holdings in *Ewing v. United States*, 914 F.2d 499 (4th Cir. 1990) and *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503 (4th Cir. 1999) control on this point.  As the Fourth Circuit said in *Estate of Michael*, a payment made under such circumstances is "subject to mandatory refund" under 26 U.S.C. § 6401(a)[3] and "the IRS must refund it."   173

---

[3]  All "26 U.S.C. §" references herein are to the Internal Revenue Code of 1986, as in effect during the operative period.

F.3d at 509.  The statute itself is clear: "The term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."  26 U.S.C. § 6401(a).  Because the IRS was legally required to refund these amounts back to Discovery, the refunds paid by the IRS cannot be "erroneous" regardless of the IRS's new position on ETI or any other substantive tax issue.

In addition, the assessments and refunds made by the IRS in 2015 and 2016 were made in accordance with the terms of a binding closing agreement that was executed by the parties.  26 U.S.C. § 7121(b)(2) prevents either party to such an agreement from modifying an assessment or refund made in accordance with such agreement.  The IRS is statutorily barred from unilaterally modifying the agreed assessments and refunds as it seeks to do through this suit.  For this separate reason, the refunds were not erroneous.

## Issues Presented

**Issue 1:**  Under 26 U.S.C. § 6401(a) and the Fourth Circuit's holdings in *Ewing* and *Estate of Michael*, the IRS must refund unassessed tax payments that are made after the period of limitations for assessment expired.  The period of limitations for Discovery's 2006 and 2007 tax years expired on December 31, 2011, after which Discovery made additional payments of tax in 2012 and 2014.  Discovery waived its defense of the period of limitations on assessment for an agreed portion of these 2012 and 2014 payments while the IRS agreed to refund the remaining portion.  Was the refund of this portion of the 2012 and 2014 payments erroneous?

**Issue 2:**  26 U.S.C. § 7121(b)(2) prevents the IRS and the taxpayer from modifying a tax assessment or refund made in accordance with a closing agreement.  In accordance with paragraph 3 of the closing agreement entered into by Discovery and the IRS in August 2015, the IRS (1) assessed additional tax of $44,040,833 for 2006 and $8,778,806 for 2007, (2) applied Discovery's 2012 and 2014 tax payments to satisfy those liabilities, and (3) refunded all excess

3

payments back to Discovery.  May the IRS now modify the assessments and refunds that were made in accordance with the closing agreement to treat the refunds as erroneous?

<u>**Factual Background**</u>

**A.** **Discovery fully paid its 2006 and 2007 tax bills for amounts that the IRS timely assessed.**

Discovery filed tax returns and reported and paid tax liabilities for its tax years ending December 31, 2006 and December 31, 2007.[4]  The Internal Revenue Code generally gives the IRS three years to examine a taxpayer's returns and "assess" (or officially record) the tax due.[5]  To facilitate the IRS's routine audit of Discovery's tax returns, Discovery and the IRS agreed to extend the statute of limitations for the IRS to assess tax for both the 2006 and 2007 tax years until December 31, 2011.[6]  The IRS assessed, on a timely basis (*i.e.*, prior to the expiry of the extended period of limitations), the additional tax liabilities identified by Discovery and the IRS during the course of the audits of those years.[7]  And, as summarized in the tables below, Discovery fully paid all of these additional assessed tax liabilities before the period of limitations for assessment expired on December 31, 2011.

---

[4]  2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 2–4; 2007 Account Transcript (Declaration of Allison De Tal, Ex. B), at 2–4.  The account transcript is an IRS document that shows all payments, assessments, and adjustments made with respect to a taxpayer's account for a given taxable year.  *See* Internal Revenue Manual 21.2.3.2.2 (Oct. 1, 2013).

[5]  *See* 26 U.S.C. § 6201(a)(1) (requiring the IRS to assess all taxes determined by the taxpayer or IRS); 26 U.S.C. § 6203 (requiring assessment to be made through a recording of the liability); 26 U.S.C. § 6501(a) (requiring assessments within 3 years of when the return was filed).

[6]  Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 2 (at 2–3). Extending the period of limitations for assessment is a common practice in routine audits of corporate taxpayers.

[7]  The additions to tax arose primarily from amended returns filed by Discovery relating to foreign tax elections.

### 2006 Tax Year (as of Close of Statute of Limitations)

| Amount Owed by Discovery | | Amount Paid by Discovery | |
| --- | --- | --- | --- |
| Tax Assessed | 7,049,462 | Payments[8] | 8,575,552 |
| Interest | 614,382 | Credits and Refunds | (911,708) |
| Total Owed by Discovery | 7,663,844 | Total Paid by Discovery | 7,663,844 |

### 2007 Tax Year (as of Close of Statute of Limitations)

| Amount Owed by Discovery | | Amount Paid by Discovery | |
| --- | --- | --- | --- |
| Tax Assessed | 95,254,377 | Payments | 109,462,691 |
| Interest | 5,547,008 | Credits and Refunds[9] | (8,660,427) |
| Total Owed by Discovery | 100,801,385 | Total Paid by Discovery | 100,802,263 |

Discovery's payments completely discharged all of its tax liabilities (whether originally reported on the returns or assessed during the audit) for its 2006 and 2007 tax years.[10]  Said another way, after the period of limitations expired on December 31, 2011, without an agreement by Discovery, the IRS was legally barred from any further assessment or collection of tax for Discovery's 2006 and 2007 tax years.[11]

**B.     Discovery and the IRS entered into a closing agreement that agreed to a specific amount of additional tax and to refunds of any excess payments.**

In order to allow taxpayers to maximize their use of foreign tax credits and deductions, the Internal Revenue Code gives a taxpayer a 10-year window in which to change its treatment of foreign taxes.[12]  During 2012 and 2014, Discovery made timely foreign tax elections for its 2001 to 2007 tax years.[13]  These elections had carry-forward effects that resulted in increases to

---

[8]  In 2011, Discovery made a payment with an amended return that ended up exceeding the tax ultimately due because it subsequently changed the relevant taxpayer election covered by that amended return.

[9]  The additional payments made by Discovery were applied as credits for other tax years or refunded (with a remaining account balance of $878 due to Discovery).  These credits and refunds are not at issue in this case.

[10]  *See* Appendix A and Appendix B for a detailed summary of this information.  All of the numbers can be tied to the IRS's 2006 Account Transcript (Declaration of Allison De Tal, Ex. A) and 2007 Account Transcript (Declaration of Allison De Tal, Ex. B).

[11]  26 U.S.C. § 6501 gives additional time to assess certain tax items that are not at issue in this case.  *See, e.g.*, 26 U.S.C. § 6501(j).

[12]  *See* 26 U.S.C. § 901(a); Treas. Reg. § 1.901-1(d); 26 U.S.C. § 6511(d)(3)(A).

[13]  Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), at 1 and ¶ 1 (at 2).

Discovery's tax liabilities for its 2006 and 2007 tax years.[14]  To reflect these changes, Discovery filed amended 2006 and 2007 returns in 2012 and 2014 that showed the additional taxes due.[15] The amended returns filed by Discovery after December 31, 2011 also included other items that would either increase or reduce the amount of additional tax that would be due.[16]  This includes the ETI exclusions that are referenced in the IRS's amended complaint.[17]  Knowing that additional tax would be owing (although not knowing the exact amount), Discovery made additional payments to the IRS in 2012 and 2014 (referred to herein as "Discovery's 2012 and 2014 tax payments") to satisfy the tax and interest liabilities.[18]  Discovery's 2012 and 2014 tax payments, totaling approximately $52.1 million for 2006 and $24 million for 2007, are summarized below:[19]

**Discovery's Payments (After Statute of Limitations Closed)**

|  | **2006** | | | | **2007** | |
| --- | --- | --- | --- | --- | --- | --- |
|  | **Tax** | **Interest** | **Total** | **Tax** | **Interest** | **Total** |
| 03/15/2012 | 2,759,986 | 774,569 | 3,534,555 | 4,670,435 | 861,277 | 5,531,712 |
| 12/27/2012 | 14,642,755 | 4,562,021 | 19,204,776 | 1,805,110 | 384,488 | 2,189,598 |
| 09/12/2014 | 29,375,388 | - | 29,375,388 | 16,276,288 | - | 16,276,288 |
| **Total Paid** | **46,778,129** | **5,336,590** | **52,114,719** | **22,751,833** | **1,245,765** | **23,997,598** |

As is usual in these circumstances, the IRS examined the 2006 and 2007 amended returns filed by Discovery and proposed certain adjustments to the tax items reported therein.[20] Discovery and the IRS ultimately agreed to the resulting net tax that was due after accounting for

---

[14]  *Id.* at 1–2.

[15]  *Id.*

[16]  *See* Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 3–5.

[17]  *See* Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 3; Am. Comp. at ¶¶ 13–16.

[18]  2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 5; 2007 Account Transcript (Declaration of Allison De Tal, Ex. B), at 5.

[19]  *Id.*

[20]  The IRS made determinations on each item, allowing some and denying others (in whole or part), based on its examination of the amended returns.  *See* Examination Report (Declaration of Lisa Z. Anderson, Ex. B).

all of the adjustments.[21]  Specifically, the IRS computations showed additional tax due (beyond the tax previously assessed) of \$44,040,833 for 2006 and \$8,778,806 for 2007.[22]  This computation of additional tax accounted for *all* tax items reflected on the amended returns, including the foreign tax elections and the ETI exclusions.[23]  Because the amounts reflected *additions* to tax, they did not reduce the amount of tax that was timely assessed before December 31, 2011 or generate a refund of amounts paid before that date.  To the contrary, Discovery owed more tax as a result of the amended returns.  Accordingly, these amounts had to be collected from Discovery's 2012 and 2014 tax payments.

But there was a problem: 26 U.S.C. § 6501 barred the IRS from assessing any additional tax amounts for 2006 or 2007 and 26 U.S.C. § 6401 prevented the IRS from applying any of Discovery's 2012 and 2014 tax payments to satisfy those tax liabilities.  Pursuant to 26 U.S.C. § 6401, because those payments were made "after the expiration of the period of limitation" for 2006 and 2007 (December 31, 2011), they were deemed overpayments under the Internal Revenue Code, "subject to mandatory refund."  *Estate of Michael*, 173 F.3d at 509; *accord.* 26 U.S.C. § 6402.  To fix this problem, the IRS had to have Discovery waive its statute of limitations defense with respect to the agreed amount of additional tax.[24]  This would allow the IRS to assess the agreed tax amounts and apply Discovery's 2012 and 2014 tax payments to

---

[21]   Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3 (at 3); Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 2.
[22]   *Id.*
[23]   The IRS's computations were memorialized in the Examination Report.  The IRS adjusted income by approximately \$123 million for 2006 and \$25.1 million for 2007 due to adjustments to net operating loss deductions, ETI, amortization, foreign tax deductions, foreign dividend gross-ups, and section 199 deductions.  *See* Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 1, 3.  These adjustments yielded the mentioned increases in tax of \$44,040,833 for 2006 and \$8,778,806 for 2007.  *See id.* at 2.
[24]   *See* Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3(a) (at 3).

satisfy those liabilities.[25]   Discovery was willing to do so in order to ensure that the IRS would allow the foreign tax elections made in the prior tax years to be properly effectuated pursuant to the package negotiation.[26]

Accordingly, the parties negotiated, and ultimately agreed to execute, a closing agreement whereby Discovery waived its period of limitations defense for the IRS to assess the specific additions to tax computed for 2006 and 2007.[27]   The closing agreement was executed by Discovery on August 20, 2015 and by the IRS on August 24, 2015.[28]   Paragraph 1 specifies the foreign tax elections made by Discovery for its 2001–2007 tax years.[29]   Paragraph 2 acknowledges that the "statute of limitations for assessment of taxes against Taxpayer for tax years 2006 and 2007 expired on December 31, 2011," and that Discovery filed amended returns and made payments after that date.[30]   Paragraph 3 states that,

> [a]s a result of the foreign income taxes related to tax years 2001 through 2007, and the elections made with respect thereto, there is now due an additional tax for tax year 2006 (above that previously assessed) in the amount of $44,040,833 and for tax year 2007 (above that previously assessed) in the amount of $8,778,806.[31]

As noted above, this amount reflected the IRS determinations regarding *all* of the items set forth in the amended returns filed by Discovery, including the ETI exclusions (which reduced the amount of additional tax that would have otherwise been assessed with respect to the foreign tax elections and other tax items).[32]

As required for the IRS to assess the additional 2006 and 2007 tax amounts specified in paragraph 3 and retain Discovery's 2012 and 2014 tax payments for those amounts, Discovery

---

[25] *Id.*
[26] *Id.* at ¶¶ 1, 3 (at 2–3).
[27] *Id.* at ¶ 3 (at 3).
[28] *Id.* at 4.
[29] *Id.* at ¶ 1 (at 2).
[30] *Id.* at ¶ 2 (at 2–3).
[31] *Id.* at ¶ 3 (at 3).
[32] Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 1–5.

agreed that it would "not assert the period of limitations on assessment or collections" and agreed that the IRS could "assess and collect those liabilities."[33] The scope of that waiver was defined by reference to the amount of "the additional liabilities for tax or interest for tax years 2006 and 2007," which were specifically set out in paragraph 3 as $44,040,833 for 2006 and $8,778,806 for 2007.[34]   And subsection (b) of paragraph 3 states that the IRS will "apply the additional amounts paid" by Discovery in 2012 and 2014 against such tax and interest and "refund the excess" to Discovery.[35]   The closing agreement enumerates the specific rights of the IRS and Discovery to act beyond what was specifically agreed to by the parties in the closing agreement.[36]   For example, the IRS retained the right to review claims for foreign tax credit carrybacks, while Discovery retained the right to further amend its foreign tax elections.[37] Paragraph 7 specified that the closing agreement was otherwise "final and conclusive."[38] Notably, the closing agreement did not give Discovery the right to file a refund suit for the amount of Discovery's 2012 and 2014 tax payments applied against its tax pursuant to the closing agreement and did not give the IRS the right to file an erroneous refund suit for the amount of Discovery's 2012 and 2014 tax payments refunded pursuant to the closing agreement.

> ### C.   Pursuant to the closing agreement, Discovery received refunds for the excess of its 2012 and 2014 tax payments that it made after the statute of limitations for assessment had expired.

Prior to the initiation of this suit, both parties complied with the terms of the closing agreement.   For its part, the IRS assessed the additional tax that was due pursuant to that agreement.   Specifically, on November 9, 2015, the IRS assessed additional tax of $44,040,833

---

[33]   Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3(a) (at 3).

[34]   *Id.*

[35]   *Id.* at ¶ 3(b) (at 3).

[36]   *See id.* at ¶¶ 4, 5, 6, and 7(a)–(c) (at 3–4).

[37]   *See id.* at ¶¶ 4, 5 (at 3).

[38]   *See id.* at ¶ 7 (at 4).

for 2006 and $8,778,806 for 2007.[39]  Discovery has not disputed these additions to tax or raised a period of limitations defense with respect to the assessment or collection of those amounts.  As such, the IRS continues to hold all of this money today.  As summarized below, Discovery's 2012 and 2014 tax payments (totaling $52.1 million for 2006 and $24 million for 2007) were used to satisfy the amount of tax and interest assessed.  For this purpose, the IRS transferred $7.4 million of Discovery's tax payments for 2007 tax year as a credit to Discovery's 2006 tax year.[40]

**2006 Tax Year (After Statute of Limitations Closed)**

| Amount Owed by Discovery | | Amount Paid by Discovery | |
|---|---|---|---|
| Additional Tax Assessed | 44,040,833 | 2012 and 2014 Payments | 52,114,670 |
| Additional Interest | 12,951,265 | Credit Applied from 2007 | 7,378,953 |
| Additional Amounts Due | 56,992,098 | Total Paid by Discovery | 59,493,623 |
| | | Difference | 2,501,525 |
| | | Refund Paid | 2,501,525 |

**2007 Tax Year (After Statute of Limitations Closed)**

| Amount Owed by Discovery | | Amount Paid by Discovery | |
|---|---|---|---|
| Additional Tax Assessed | 8,778,806 | Account Balance | 878 |
| Additional Interest | 1,844,176 | Additional Payments | 23,997,598 |
| Additional Amounts Due | 10,622,982 | Additional Credits | (7,378,953) |
| | | Total Paid by Discovery | 16,619,524 |
| | | Difference | 5,996,542 |
| | | Refund Paid | 5,996,542 |

Thus, Discovery made excess payments beyond the agreed additions to tax in the total amounts of approximately $2,501,525 for 2006 and $5,996,542 for 2007.  The IRS refunded these excess payments consistent with paragraph 3(b) of the closing agreement, issuing refund

---

[39]  *See* 2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 5; 2007 Account Transcript (Declaration of Allison De Tal, Ex. B), at 5.
[40]  Account Transcript for 2006 (Declaration of Allison De Tal, Ex. A), at 5; Account Transcript (Declaration of Allison De Tal, Ex. B), at 5.  The IRS also transferred $3,319 of Discovery's tax payments for 2007 as a credit to Discovery's 2013 tax year. *See id.* at 6.

checks in the amounts of $2,501,525.01 for 2006 and $5,996,542.11 for 2007.[41]  These are the refunds that the IRS now alleges are erroneous.

Discovery fully paid every dollar of tax that was assessed and determined by the IRS for 2006 and 2007.  As the charts show, the amounts refunded by the IRS correspond to the excess payments made by Discovery in 2012 and 2014, after the period of limitations for assessment had expired.[42]  None of these refunded payments were ever assessed by the IRS (either prior to December 31, 2011 or thereafter pursuant to the closing agreement).  Nor can they be now.  *See* 26 U.S.C. § 6501.

## Argument

### I.    Standard of review.

Courts will grant a motion for summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Conversely, summary judgment is inappropriate if a material factual issue may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party has the burden to show that "there is no genuine dispute as to any material fact."  *Bank of N.Y. Mellon v. Ashley*, No. DKC 14-2914, 2017 U.S. Dist. LEXIS 40084, at *7 (D. Md. Mar. 20, 2017).  However, if the nonmoving party has the burden of proof (as is the case here) and fails to make a sufficient showing of an essential element of its case, then there is no genuine dispute of material fact.  *Id.*

Discovery's motion involves legal issues that are properly resolved through summary judgment.  The relevant facts are found in the IRS's own documents and the terms of the closing

---

[41]   2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 6; 2007 Account Transcript (Declaration of Allison De Tal, Ex. B), at 6.

[42]   *See* Appendix C and Appendix D for more detailed information.  Again, all of the numbers can be tied to the IRS's 2006 Account Transcript (Declaration of Allison De Tal, Ex. A) and 2007 Account Transcript (Declaration of Allison De Tal, Ex. B).

agreement executed by the parties.  The key facts—(1) the date that the period of limitations for assessment expired, (2) the dates of Discovery's tax payments, and (3) the terms of the closing agreement—are all established by the documents and uncontroverted by the parties.  As such, there is no genuine issue of material fact.  *See id.* at *10.

## II.  To prevail, the IRS must show that Discovery was not entitled to the refunds paid.

The IRS brings this action under 26 U.S.C. § 7405(b), which provides a mechanism to recover "[a]ny portion of a tax imposed by this title which has been erroneously refunded . . . ."  In this type of action "the burden is upon the government to prove that the refund was erroneous."  *United States v. Wood*, 79 F.2d 286, 287 (3d Cir. 1935).  This means that the IRS must prove that the taxpayer "was not entitled to the refund" that was paid.  *United States v. Foster*, 51 Fed. Appx. 915, *917–*918 (4th Cir. 2002).  As detailed below, the refunds paid by the IRS were permitted—in fact, required—by the Internal Revenue Code and the closing agreement executed by the parties.  As such, the 2006 and 2007 refunds cannot be "erroneous" and the Court should reject the government's claims to recover those amounts.

## III.  Discovery's excess payments constituted "overpayments" under 26 U.S.C. § 6401(a) that the IRS was required to refund.

On the question of whether Discovery was entitled to the 2006 and 2007 refunds, 26 U.S.C. § 6401(a) is determinative.  That statute provides an easy to understand, blanket rule that requires the IRS to refund all payments made by the taxpayer after the period of limitations for assessment of tax under 26 U.S.C. § 6501 expires.[43]  26 U.S.C. § 6401(a) operates by defining payments made after the period of limitations expires as "overpayments."  That is a critical term in the Internal Revenue Code because 26 U.S.C. § 6402(a) signals that such amounts must be refunded (or credited) to the taxpayer.  26 U.S.C. § 6402(a) specifically states that:

---

[43]  Naturally, this rule does not apply in the case of payments made to satisfy unpaid tax bills (*i.e.*, amounts previously assessed and unpaid).  Such is not the case here.

> [i]n the case of any ***overpayment***, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and ***shall***, subject to . . . [certain offsets] ***refund any balance to such person***.

(Emphasis added). Based on these provisions, it is black letter law that taxpayers are legally entitled to receive refunds of payments that are made after the period of limitations for assessment has expired and, conversely, that the IRS is legally required to pay such refunds. *See, e.g.*, *Estate of Michael*, 173 F.3d 503, 509–511 (4th Cir. 1999) (analyzed below); *Alexander v. United States,* 44 F.3d 328, 331 (5th Cir. 1995) ("Under the Code, payments made after the limitations period are defined as 'overpayments' and, as such, must be refunded."); *Diamond Gardner Corp. v. Commissioner,* 38 T.C. 875, 881 (1962) ("[A]ny payment by a taxpayer of a barred tax liability, whether voluntary or involuntary, automatically becomes an 'overpayment' and hence subject to mandatory refund."). 26 U.S.C. § 6401(a) provides no exceptions to this blanket rule.

26 U.S.C. § 6401(a) was enacted in its current form in 1954 and was based on Section 607 of the 1928 Internal Revenue Code. Congress enacted the original 1928 provision to ensure that taxpayers were able to recover funds paid after the period of limitations for assessment had expired. S. Rept. No. 70-960, at 41 (1928). This rule ensured that the period of limitations "put an end to controversy" for the given tax year. Rep. of Joint Comm. on Internal Revenue Taxation, at 71 (1928). Consistent with these purposes, the provision provides recovery "regardless of the correct tax liability" so long as the payment was made after the period of limitations had expired and the payment was not made to satisfy an unpaid amount that was assessed within the period of limitations. S. Rep. No. 70-960, at 41 (1928). "It is immaterial whether the payment was voluntary or involuntary . . . ." *Id.*

13

The facts relevant to the application of 26 U.S.C. § 6401(a) are not in dispute.   The closing agreement stipulated that the periods of limitations for assessment of taxes for 2006 and 2007 expired on December 31, 2011.[44]  As summarized above, Discovery made payments on March 15, 2012, December 27, 2012, and September 12, 2014 that totaled approximately $76.1 million ($52.1 million for 2006 and $24 million for 2007).   None of these payments related to unpaid tax timely assessed by the IRS; Discovery had already paid in full (and thus discharged) all tax that the IRS timely assessed before December 31, 2011 and had no outstanding balance due on its account for 2006 or 2007.[45]

Because Discovery made the 2012 and 2014 tax payments after the period of limitations had expired, all $76.1 million paid by Discovery reflected overpayments under 26 U.S.C. § 6401.   However, Discovery waived its defenses to the assessment and collection of the specific additions to tax of $44,040,833 million for 2006 and $8,778,806 million for 2007 (plus applicable interest) as agreed in paragraph 3 of the closing agreement, and thus did not seek refunds of the 2012 and 2014 payments that were applied to satisfy those agreed liabilities.[46] The IRS computed the accompanying interest to be approximately $13 million for 2006 and $1.8 million for 2007, for a total tax and interest bill of approximately $67.6 million ($57 million for 2006 and $10.6 million for 2007).   Discovery thus allowed the IRS to keep approximately $67.6 million of the $76.1 million that it paid in 2012 and 2014.   The IRS was required to refund the remaining approximately $8.5 million of payments made by Discovery in 2012 and 2014 pursuant to 26 U.S.C. § 6401 given that Discovery did not waive its period of limitations defenses with respect to those amounts.

---

[44] *See* Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 2 (at 2–3).

[45] *See* 2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 3–5; 2007 Account Transcript (Declaration of Allison De Tal, Ex. B), at 2–4.  A summary of the payments made and taxes due before December 31, 2011 is provided above.

[46] *See* Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3 (3).

The Fourth Circuit's decision in *Ewing v. United States*, 914 F.2d 499 (4th Cir. 1990), directly controls on this issue.  In that case, the IRS and the taxpayer negotiated and executed closing agreements within the statute of limitations for assessment under 26 U.S.C. § 6501. *Ewing*, 914 F.2d at 500.  The agreements specified the additional tax due and the taxpayer made the necessary payments to the IRS.  *Id.*  Unlike Discovery, the taxpayer attempted to avoid the agreed tax bill and recoup that money because the IRS failed to assess the agreed taxes before the 26 U.S.C. § 6501 period of limitations had expired.  *Id.*

Given the closing agreement, the Fourth Circuit concluded that the IRS could keep the taxpayer's money that was paid *before* the 26 U.S.C. § 6501 statute of limitations had expired. *Id.* at 504.  But the Court held that a *different* analysis must be applied to amounts that were paid *after* the 26 U.S.C. § 6501 statute of limitations had expired.  *Id.* at 504–505.  As to these amounts, the Circuit concluded that because amounts collected by the IRS outside of the period of limitations for assessment constituted overpayments for purposes of 26 U.S.C. § 6401(a) and because, in the closing agreement at issue in that case, Ewing did not agree to abstain from claiming such a refund, such amounts had to be refunded.  *Id.* at 505.  Thus, even though the closing agreement in *Ewing* fixed the tax due, the IRS was still not permitted to retain payments made after the period of limitations had expired because of 26 U.S.C. § 6401(a).  This is even more plainly the case here, where Discovery's closing agreement explicitly computes which portion of its 2012 and 2014 tax payments were to be retained by the IRS and which portion was to be refunded.[47]  In this respect, unlike in *Ewing*, Discovery's closing agreement *requires* the IRS to refund the portion of those payments over which Discovery did not waive its period of limitations defense.

---

[47] *See* Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3 (at 3).

The Fourth Circuit reaffirmed these bright-line principles in *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503 (4th Cir. 1999).  In that case, the IRS and the taxpayer agreed to the proper amount of estate tax and the taxpayer fully paid the amounts due.  *Estate of Michael*, 173 F.3d at 504–505.  The IRS later reopened the case and claimed that it miscalculated the tax. *Id.* at 505.  The IRS recognized that the statute of limitations for assessment had expired, but argued that it was nonetheless permitted to recalculate the taxes under the Supreme Court's decision in *Lewis v. Reynolds*, 284 U.S. 281 (1932).  *Id.* at 508.  *Lewis* had allowed the IRS to retain payments made *before* the period of limitations expired to the extent they did not exceed the amount "which might have been properly assessed and demanded."  *Id.* (quoting *Lewis*, 284 U.S. at 283).  The Fourth Circuit rejected the IRS's position.  *Id.*  Noting the limits of *Lewis*, the Circuit explained that *Lewis* provided the IRS with a "shield" to ward off refund suits but that "it did not forge a 'sword' with which the IRS could assess or collect additional taxes in violation of § 6501(a)."  *Id.*  As the Fourth Circuit explained, any other reading "would nullify the statute of limitations."  *Id.*  The Fourth Circuit further noted that the IRS would not have fared any better if the taxpayer were to pay the alleged deficiency.  "Any such payments would be 'overpayments' under I.R.C. § 6401, thus would be subject to ***mandatory refund***."  *Id.* at 509 (emphasis added). Reaffirming *Ewing*, the Circuit held that the taxpayer "plainly would be entitled to refund of any such amounts."  *Id.*  The Court could not have been clearer: "If a tax payment is an 'overpayment,' ***the IRS must refund it***."  *Id.* (emphasis added).

Using the words of the Fourth Circuit, the portion of the payments made by Discovery after the period of limitations for assessment had expired and as to which it did not waive its period of limitations defense are "subject to mandatory refund" under 26 U.S.C. § 6401(a) and "the IRS must refund it."  *Estate of Michael*, 173 F.3d at 509.  On this basis alone, the refunds were not erroneous.

16

**IV.    The IRS cannot modify refunds that it made in accordance with a closing agreement.**

While the court can resolve the 2006 and 2007 refunds solely based on 26 U.S.C. §

6401(a) and the Fourth Circuit precedent discussed above, the IRS's claims also fail because

they violate the terms of 26 U.S.C. § 7121(b)(2) and the closing agreement entered into by the

parties.  On November 9, 2015, the IRS assessed tax in the amounts of $44,040,833 for 2006 and

$8,778,906 for 2007 in accordance with the closing agreement.[48]  On November 16, 2015 and

March 28, 2016, the IRS paid Discovery refunds of $5,996,542 for 2007 and $2,501,525 for

2006, respectively, in accordance with the closing agreement.[49]  The IRS asks this court to take

the extraordinary step of clawing back the refunds that were paid in accordance with the closing

agreement's final and conclusive terms despite the absence of any terms in the closing agreement

that reserve the right to file an erroneous refund suit.

26 U.S.C. § 7121(a) authorizes the IRS to enter into written closing agreements with

taxpayers "relating to the liability of such person . . . in respect of any internal revenue tax for

any taxable period."  "Closing agreements 'were intended finally to settle the income taxes for

the years in question and to prevent reaudits of assessments.'"  *Kercheval v. United States*, No.

CCB-97-968, 1997 U.S. Dist. LEXIS 19057, at *4 (D. Md. Nov. 18, 1997) (citing *Aetna Life Ins.

Co. v. Eaton*, 43 F.2d 711, 713 (2d Cir. 1930));  *see also Wolverine Petroleum Corp. v.

Commissioner*, 75 F.2d 593, 596 (8th Cir. 1935).  "The singular characteristic of a closing

agreement is its final and binding nature."  William D. Elliott, *Federal Tax Collections, Liens &

Levies*, ¶ 23.03 (Thomson Reuters, 2d ed. 1996 and Supp. 2018-1).  This is explicit in both 26

U.S.C. § 7121(b) and the language of the closing agreement itself.  26 U.S.C. § 7121(b) provides

---

[48]  2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 5; 2007 Account
Transcript (Declaration of Allison De Tal, Ex. B), at 5.
[49]  2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 6; 2007 Account
Transcript (Declaration of Allison De Tal, Ex. B), at 6.

that, once agreed by the Secretary, "such agreement shall be final and conclusive" absent a showing of "fraud or malfeasance, or misrepresentation of a material fact."   26 U.S.C. § 7121(b)(1) specifies that "the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States."   26 U.S.C. § 7121(b)(2) goes further, stating that "in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."   Thus, pursuant to the plain terms of 26 U.S.C. § 7121(b)(2), the IRS is prohibited from modifying a closing agreement and, as relevant here, any refund "made in accordance therewith."

In this case, Discovery and the IRS executed a closing agreement that was beneficial to both parties.   The IRS benefited from the closing agreement because it was otherwise barred from assessing additional tax because the period of limitations had expired.   The closing agreement was crucial in this regard because in it Discovery agreed to waive its period of limitations defense to allow the IRS to assess and collect this additional tax.[50]   This is the amount *that the IRS itself computed and determined to be correct* at the time the closing agreement was negotiated and executed.[51]   In exchange, the IRS agreed that it would apply the additional amounts paid in 2012 and 2014 to that tax liability and refund the excess to Discovery.[52]   This was the bargain agreed to and implemented by the parties.

The closing agreement was also clear as to its finality.   It explains that the closing agreement was being executed pursuant to 26 U.S.C. § 7121 and was "final and conclusive" absent "fraud, malfeasance, or misrepresentation of a material fact."[53]   Paragraph 3 reflected the

---

[50]   Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3(a) (at 3).

[51]   *Id.* at ¶ 3 (at 3); Examination Report (Declaration of Lisa Z. Anderson, Ex. B), at 2.

[52]   Form 906, Closing Agreement (Declaration of Lisa Z. Anderson, Ex. A), ¶ 3(b) (at 3).

[53]   *Id.* at ¶ 7 (at 3).

specific amounts of additional tax that Discovery permitted the IRS to assess and for which

Discovery would not assert its period of limitations defenses—$44,040,833 for 2006 and

$8,778,906 for 2007—and stated that the Commissioner would apply the additional amounts

paid by Discovery "against such tax and interest and refund the excess to Taxpayer as provided

by law." [54]   While the closing agreement preserved rights for certain actions, the closing

agreement did not preserve the right for Discovery to file claims for refund with respect to the

assessed taxes and did not preserve the right for the IRS to file an erroneous refund suit with

respect to the refunded payments.

Pursuant to paragraph 3 of the closing agreement, the IRS assessed $44,040,833 of tax for

2006 and $8,778,906 of tax for 2007 on November 9, 2015. [55]   As such, those assessments were

made "in accordance with" the closing agreement and thus are subject to the protections of 26

U.S.C. § 7121(b).   Consistent with paragraph 3(b) of the closing agreement, the IRS applied

Discovery's 2012 and 2014 tax payments against such tax and interest and refunded the

remainder to Discovery, paying a refund of $2,501,525 on March 28, 2016 for Discovery's 2006

tax year and a refund of $5,996,542 on November 16, 2015 for Discovery's 2007 tax year. [56]

Both refunds were thus also made "in accordance with" the closing agreement and are also

subject to the protections of 26 U.S.C. § 7121(b).   26 U.S.C. § 7121(b) specifically treats these

refunds as final and conclusive and states that these assessments and refunds "shall not be

---

[54]   *Id.* at ¶ 3(b) (at 3).
[55]   2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 5; 2007 Account
Transcript (Declaration of Allison De Tal, Ex. B), at 5.
[56]   2006 Account Transcript (Declaration of Allison De Tal, Ex. A), at 6; 2007 Account
Transcript (Declaration of Allison De Tal, Ex. B), at 6.

annulled, modified, set aside, or disregarded."   The statute prohibits such modification or reopening of the assessments or refunds "in any suit, action, or proceeding."[57]

This result makes sense.  Both the closing agreement and 26 U.S.C. § 7121 articulate the standard by which a refund paid in accordance with a closing agreement may be reopened.  That standard is "a showing of fraud or malfeasance, or misrepresentation of a material fact."  21 U.S.C. § 7121(b).  As both this Court and the Fourth Circuit have acknowledged, allowing one party to reopen a closing agreement just because its "'legal position later turns out to be erroneous would vitiate the statute.'"  *Kercheval v. United States*, No. 97-2734, 1999 U.S. App. LEXIS 1070, at *10 (4th Cir. Jan. 26, 1999) (quoting *Kercheval v. United States*, No. CCB-97-968, 1997 U.S. Dist. LEXIS 19057, at *5 (D. Md. Nov. 18, 1997)).  The IRS's attempt to claw back the refunds undermines the statutory purpose of finality that 26 U.S.C. § 7121 and closing agreements are designed to achieve.  If courts were to validate this approach, the finality afforded to closing agreements would be undermined by the ever-present threat that the IRS will deem that it made a mistake and seek to recover amounts that it paid in accordance with the agreement.  This is not good for taxpayers, the IRS, or the efficient administration of the tax laws.  Just as Discovery could not file a refund suit challenging the agreed additions to tax assessed by the IRS, the IRS similarly cannot modify the agreed assessments and refunds.  Once the closing agreement was signed and the assessments and refunds effectuated, the assessment and corresponding refund were fixed and cannot now be modified.  As a result, the refunds were not erroneous and may not be recovered by the IRS.

---

[57]  The relevant issue is whether the IRS could modify the *refunds* that were paid, not whether the IRS could make additional changes to Discovery's *ETI exclusions*.  The IRS's ability to make additional changes to the ETI exclusions is most easily addressed by 26 U.S.C. § 6501, which barred the IRS from making any further assessments after December 31, 2011 absent Discovery's specific waiver of its period of limitations defense with respect to that issue.  The closing agreement contains no such waiver.

## Conclusion

The IRS's payment of refunds of $2,501,525 for 2006 and $5,996,542 for 2007 was required by 26 U.S.C. § 6401(a) and done in accordance with the closing agreement executed by the parties.  The IRS has no legal right to that money and, as such, the refunds were not, as a matter of law, erroneous.  For these reasons, Discovery asks the Court to grant Discovery's motion for partial summary judgement and to hold that the IRS may not recover any amounts with respect to Discovery's 2006 and 2007 tax years.

Respectfully submitted,


BAKER & McKENZIE LLP

| | |
|---|---|
| _____/s/_____ | _____/s/_____ |
| George M. Clarke III | Phillip J. Taylor, *Pro Hac Vice* |
| Bar No. 16688 | Bar No. 807985 |
| 815 Connecticut Avenue, N.W. | 815 Connecticut Avenue, N.W. |
| Washington, DC 20006 | Washington, DC 20006 |
| Phone: (202) 835-6184 | Phone: (202) 452-7082 |
| Fax: (202) 416-7184 | Fax:  (202) 416-7071 |
| Email: george.clarke@bakermckenzie.com | Email: phillip.taylor@bakermckenzie.com |
| | |
| _____/s/_____ | _____/s/_____ |
| Mireille R. Oldak, *Pro Hac Vice* | Allison M. De Tal, *Pro Hac Vice* |
| Bar No. 808006 | Bar No. 808100 |
| 815 Connecticut Avenue, N.W. | 815 Connecticut Avenue, N.W. |
| Washington, DC 20006 | Washington, DC 20006 |
| Phone: (202) 835-6176 | Phone: (202) 835-6242 |
| Fax:  (202) 416-7176 | Fax:  (202) 416-7074 |
| Email: mireille.oldak@bakermckenzie.com | Email: allison.detal@bakermckenzie.com |

*Counsel for Defendants*


Dated: March 20, 2018

## ADDENDUM

### 26 U.S.C. § 6401

**§6401.  Amounts treated as overpayments.**

**(a)** Assessment and collection after limitation period. The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.

[remainder of statute omitted]

### 26 U.S.C. § 7121

**§7121.  Closing agreements.**

**(a) Authorization.**   The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

**(b) Finality.**   If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact--

(**1**) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(**2**) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

**Appendix A – Discovery's 2006 Tax Year (as of Close of Statute of Limitations)**

| Tax | Date | Amount | Payments | Date | Amount |
|---|---|---|---|---|---|
| Tax Return Filed | 10/8/2007 | 4,568,139 | Payment | 10/4/2006 | 3,639,294 |
| Additional Tax Assessed | 9/28/2009 | 423,822 | Payment | 12/15/2006 | 500,000 |
| Additional Tax Assessed | 11/7/2011 | 2,519,897 | Payment | 3/14/2007 | 750,000 |
| Removal of Tax Assessed | 11/14/2011 | -1,052,729 | Payment | 8/19/2009 | 493,160 |
| Additional Tax Assessed | 12/15/2011 | 590,333 | Payment | 11/21/2011 | 3,193,098 |
| **Tax Assessed** | | **7,049,462** | **Payments** | | **8,575,552** |

| Interest | Date | Amount | Credits and Refunds | Date | Amount |
|---|---|---|---|---|---|
| Interest Credited | 3/15/2007 | (3,832) | Credit to Account | 3/15/2007 | 20,320 |
| Interest Charged | 9/28/2009 | 66,618 | Credit Applied to 2007 | 4/15/2007 | (345,307) |
| Interest Credited | 9/28/2009 | (3) | Refund Issued | 9/28/2009 | (2,724) |
| Removed Interest Credited | 9/28/2009 | 3 | Credit Transferred to 2007 | 11/21/2011 | (583,997) |
| Interest Charged | 11/7/2011 | 673,197 | | | |
| Removed Interest Charged | 11/14/2011 | (280,175) | | | |
| Interest Charged | 12/15/2011 | 159,644 | | | |
| Interest Credit to 2007 | 12/15/2011 | 192 | | | |
| Interest Credited | 1/2/2012 | (192) | | | |
| Removed Interest Charged | 1/2/2012 | (1,070) | | | |
| **Interest** | | **614,382** | **Credits & Refunds** | | **(911,708)** |

| | | | | | |
|---|---|---|---|---|---|
| **Total Owed by Discovery** | | **7,663,844** | **Total Paid by Discovery** | | **7,663,844** |

**Source: IRS's 2006 Account Transcript (Declaration of Allison De Tal, Ex. A)**

**Appendix B – Discovery's 2007 Tax Year (as of Close of Statute of Limitations)**

| Tax | Date | Amount | Payments | Date | Amount |
|---|---|---|---|---|---|
| Tax Return Filed | 10/20/2008 | 29,912,088 | Payment | 4/16/2007 | 1,300,000 |
| Additional Tax Assessed | 9/28/2009 | 53,919,837 | Payment | 6/15/2007 | 800,000 |
| Additional Tax Assessed | 12/13/2010 | 9,608,674 | Payment | 9/17/2007 | 23,000,000 |
| Additional Tax Assessed | 12/15/2011 | 1,813,778 | Payment | 12/17/2007 | 3,000,000 |
| | | | Payment | 3/17/2008 | 11,000,000 |
| | | | Payment | 8/19/2009 | 58,026,628 |
| | | | Payment | 9/15/2010 | 4,819,289 |
| | | | Payment | 9/15/2010 | 6,132,319 |
| | | | Payment | 12/22/2011 | 1,384,454 |
| **Tax Assessed** | | **95,254,377** | **Payments** | | **109,462,691** |

| Interest | Date | Amount | Credits and Refunds | Date | Amount |
|---|---|---|---|---|---|
| Interest Charged | 9/28/2009 | 4,050,351 | Credit From 2006 | 4/15/2007 | 345,307 |
| Interest Credited | 9/28/2009 | (72) | Credit Applied to 2008 | 4/15/2008 | (9,533,219) |
| Removed Interest Credited | 9/28/2009 | 72 | Refund Issued | 9/28/2009 | (56,512) |
| Interest Charged | 12/13/2010 | 1,291,253 | Credit From 2006 | 11/21/2011 | 583,997 |
| Removed Interest | 4/25/2011 | (105,790) | | | |
| Interest Charged | 12/15/2011 | 311,194 | | | |
| **Total Interest** | | **5,547,008** | **Credits & Refunds** | | **(8,660,427)** |

| | | | | | |
|---|---|---|---|---|---|
| **Total Owed by Discovery** | | **100,801,385** | **Total Paid by Discovery** | | **100,802,263** |
| | | | **Account Balance** | | **878** |

**Source: IRS's 2007 Account Transcript (Declaration of Allison De Tal, Ex. B)**

**Appendix C – Discovery's 2006 Tax Year (After Statute of Limitations Closed)**

| Tax | Date | Amount | Payments | Date | Amount |
|---|---|---|---|---|---|
| Additional Tax Assessed | 11/9/2015 | 44,040,833 | Payment | 3/15/2012 | 3,534,555 |
| | | | Payment | 12/27/2012 | 19,204,776 |
| | | | Payment | 9/12/2014 | 29,375,338 |
| **Additional Tax Assessed** | | **44,040,833** | **2012 and 2014 Payments** | | **52,114,670** |

| Interest | Date | Amount | Credits | Date | Amount |
|---|---|---|---|---|---|
| Interest Charged | 11/9/2015 | 15,452,790 | Credit From 2007 | 9/12/2014 | 7,378,953 |
| Removed Interest Charged | 3/28/2016 | (2,483,897) | | | |
| Interest Credited | 3/28/2016 | (17,628) | | | |
| **Additional Interest** | | **12,951,265** | **Credit From 2007** | | **7,378,953** |

| | | | | | |
|---|---|---|---|---|---|
| **Additional Amounts Due** | | **56,992,098** | **Total Paid by Discovery** | | **59,493,623** |
| | | | **Difference** | | **2,501,525** |
| | | | **Refund Paid** | 3/28/2016 | **2,501,525** |

**Source: IRS's 2006 Account Transcript (Declaration of Allison De Tal, Ex. A)**

**Appendix D – Discovery's 2007 Tax Year (After Statute of Limitations Closed)**

| Tax | Date | Amount | Payments | Date | Amount |
|---|---|---|---|---|---|
| Additional Tax Assessed | 11/9/2015 | 8,778,806 | Payment | 3/15/2012 | 5,531,712 |
| | | | Payment | 12/27/2012 | 2,189,598 |
| | | | Payment | 9/12/2014 | 16,276,288 |
| **Additional Tax Assessed** | | **8,778,806** | **Additional Payments** | | **23,997,598** |

| Interest | Date | Amount | Account Balance | Date | Amount |
|---|---|---|---|---|---|
| Interest Credit from 2006 | 1/2/2012 | (192) | Account Balance | 1/1/2012 | 878 |
| Removed Interest Charged | 3/12/2012 | (1,153) | **Account Balance** | | **878** |
| Interest Charged | 11/9/2015 | 1,880,004 | | | |
| Interest Credited | 11/16/2015 | (34,483) | **Credits** | **Date** | **Amount** |
| | | | Credit Applied to 2006 | 9/12/2014 | (7,378,953) |
| **Additional Interest** | | **1,844,176** | **Credit Applied to 2006** | | **(7,378,953)** |

| | | | | | |
|---|---|---|---|---|---|
| **Additional Amounts Due** | | **10,622,982** | **Total Paid by Discovery** | | **16,619,524** |
| | | | **Difference** | | **5,996,542** |
| | | | **Refund Paid** | 11/16/2015 | **5,996,542** |

**Source: IRS's 2007 Account Transcript (Declaration of Allison De Tal, Ex. B)**